UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK (RICK) GOERNER, an individual,<br><br>              Plaintiff,<br><br>v.<br><br>AXIS REINSURANCE CO., a New York corporation, formerly known as Royal & Sun Alliance Personal Insurance Company, and DOES 1 through 50, inclusive.<br>Defendant. | CASE NO.  CV 07- 0166-GHW(MLGx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

      Following full briefing and oral argument regarding the parties' Cross-Motions for Summary Judgment on the issue of Defendant Axis Reinsurance Company's duty to defend, the Court makes the following Findings of Fact and Conclusions of Law.

## I.  **FINDINGS OF FACT**

### A.  **The Parties**

1.    Plaintiff Frederick (Rick) Goerner is a citizen of the State of California, and is and was at all times material a resident of San Juan Capistrano,

California.  (Complaint, ¶ 2.)

     2.     Defendant Axis Reinsurance Company ("Axis") is a New York corporation with its principal place of business in the State of Georgia.  (Notice of Removal filed by Axis on February 9, 2007.)

    **B.**    <u>**Uncontroverted Facts**</u>

     3.     Axis issued policy No. RLN 504221 ("Axis policy") to TransDimension, Inc. ("TDI") as the named insured, which policy was effective from **October 5, 2004** to **October 5, 2005**.  <u>See</u> Axis policy attached as Exhibit "A" to John Intondi Declaration.

     4.     Under the policy's "DIRECTORS, OFFICERS AND CORPORATE LIABILITY" coverage, Axis agreed to pay "all **Loss** on behalf of any **Insured** arising from any **D&O Claim** for a **Wrongful Act**, other than a **Wrongful Act** while serving in an **Outside Position**, first made against such **Insured**."  <u>See</u> <u>Id.</u>, Axis policy at § I(A).

     5.     The policy defines **Loss** as the amounts which the insureds become legally obligated to pay on account of a **Claim.**  <u>Id.</u> at § III(A)(7).  **Claim** means any **D&O Claim**.  <u>Id.</u> at § III(B)(1).  **D&O Claim** means, in part, "a civil, arbitration, administrative proceeding against any **insured** commenced by . . . the service of a complaint or similar pleading . . . ."  <u>Id.</u> at § III(B)(2)(b).  **Insured** means the **insured individual** and the **Policyholder.**  <u>Id.</u> at § III(B)(3).  **Insured individual** means, in pertinent part, "any one or more natural persons who are past, present or future . . . duly elected or appointed director(s), officer(s), trustee(s), or Manager(s) of the Policyholder . . . ."  **"Wrongful Act"** means "any actual or alleged error, misstatement, misleading statement, omission, neglect, or breach of duty by: (1) any **insured individual** in their capacity as such . . . ."  <u>Id.</u> at § III(B)(5)(a).  **Policyholder** means in part, the **Parent Company,** which in turn is defined to mean the company designated in the policy's Declarations, <u>i.e.</u>

2

TDI. Id. at § III(A)(12) and (13).

6.      On **July 6, 2005**, a Complaint was filed commencing a lawsuit
captioned <u>Mike Neshat aka ManuChehr Neshat and Wylinx Technologies, Inc.
vs. Mirco Modular Technologies Pte., Ltd., Alfred Low; TransDimension, Inc.;
and Rick Goerner</u>, Orange County Superior Court Case No. 05CC07916 (the
"underlying lawsuit").  <u>See</u> Exhbit A to Axis Reinsurrace Company's Request for
Judicial Notice ("ARCRJN").  In the <u>Neshat</u> Complaint, Goerner was identified
as the President, CEO and member of the Board of Directors of TDI.  Id. at page
6.  It was alleged that Goerner and TDI "encouraged" and otherwise participated
in a merger of Neshat's company, Wylinx Technologies, Inc. ("Wylinx"), with
Micro Modular Technologies PTE, Ltd. ("MMT").  Id. at page 7.  The Complaint
asserts that there were fraudulent misrepresentations made in the pre-merger
negotiations, a civil conspiracy, breach of oral and written contracts,
misappropriation of trade secrets, and intentional interference with economic
relations.  Id. at Exhibit A.

7.      By letter dated **August 3, 2005**, Axis agreed to defend Goerner
against the underlying lawsuit pursuant to a reservation of rights.  <u>See</u> Letter
attached as Ex. "B" to Intondi Declaration.

8.      On **October 26, 2005**, Neshat filed his First Amended Complaint
("FAC") in the underlying lawsuit.  <u>See</u> Exhibit B to ARCRJN.  TDI remained a
named defendant in the FAC. Axis defended Goerner against the FAC, also
pursuant to a reservation of rights.

9.      On or about **November 3, 2005**, Neshat's claims against TDI were
settled by TDI for $37,000.  $35,000 was to be paid to Neshat and $2,000 was to
be paid to the mediator as his fee.  (Notice of Settlement attached as Ex. "D" to
ARCRJN; Axis claim file note attached as Ex. "D" to Intondi Declaration.)

10.     On or about **November 16, 2005**, a "Settlement Agreement and

General Mutual Release of Claims ("Settlement Agreement") was executed between TDI and Neshat plus Wylinx.  See Ex. "C" to Intondi Declaration.  In the Settlement Agreement, Neshat and Wylinx agreed to dismiss with prejudice their claims against TDI and to release all of TDI's former and current officers, employees and agents with the exception of Goerner.  See Exhibit C at page 30 of the Intondi Declaration.  They also agreed to remove all references to TDI from any amended version of the Complaint "except for a reference regarding an alleged meeting at TDI's offices".  Id.

11.    On **February 21, 2006**, Neshat filed his Second Amended Complaint ("SAC") in the underlying lawsuit.  TDI was omitted as a named defendant in the SAC.  In his operative SAC, Neshat sued Goerner solely as an agent of MMT and as a member of the Advisory Board of U-Nav Technologies, Inc. ("U-Nav") with a stock interest in U-Nav, but not as a Director or Officer of TDI.  (SAC attached as Exhibit "C" to ARCRJN.)

12.    On **May 8, 2006,** Axis withdrew from Goerner's defense on the grounds that no allegations were being asserted in the SAC against Goerner in his capacity as a Director or Officer of TDI or any of its subsidiaries.  All references to his role as a Director and Officer of TDI that had appeared in Neshat's FAC had been removed from his SAC.  Instead, Goerner was now identified as a member of the Advisory Board of U-Nav Technologies, Inc., as someone with authority to control the actions of MMT.  (Letter attached as Exh. "A" to McInnis Declaration.)

13.    After Axis withdrew from Goerner's defense, TDI denied Goerner's tender of his defense against Neshat's lawsuit under the terms of an Indemnity Agreement between Goerner and TDI.  (Indemnity Agreement dated **February 25, 2003** between Goerner and TDI attached as Exh. "B" to Miele Decl.; Tender letter from Goerner to TDI dated **June 27, 2006** under terms of TDI

Indemnification Agreement, attached as Exh. "B" to McInnis Decl.;  TDI's denial response letter dated **August 11, 2006** attached as Exh. "C" to Miele Decl.)

14.     Neither TDI or Neshat sought a determination from the court presiding over Neshat's underlying lawsuit to the effect that their settlement had been made in "good faith" pursuant to Cal. Code of Civil Procedure § 877.6. (Transcript of **March 13, 2008** hearing before this Court, pages 4:14 – 5:2.)

15.     After the settlement between TDI and Neshat in the underlying lawsuit, after Axis withdrew from Goerner's defense and after TDI had rejected Goerner's tender under the terms of the Indemnity Agreement between Goerner and TDI, Goerner did not file a Cross-Complaint for indemnity against TDI. (Transcript of **March 13, 2008** hearing before this Court, page 3:15-24.)

## II.     CONCLUSIONS OF LAW

16.     In this lawsuit, plaintiff Goerner claims that Axis was obligated to continue to defend him against the SAC filed in the underlying lawsuit pursuant to the Directors and Officers policy that was issued by Axis to Goerner's employer TDI.

17.     Under the insuring agreement of the policy, Axis only agreed to defend D&O Claims against TDI Officers or Directors "in their capacity as such."

18.     The central issue in this case is whether the tendered claim fell within the scope of the basic coverage of the policy as defined by its insuring agreement. Royal Globe Ins. Co. v. Whitaker (1986) 181 Cal.App.3d 532, 536-37.

19.     An insurer can properly refuse to defend its insured where undisputed facts conclusively show that the claim is not covered by the insuring agreement, thereby eliminating any potential for an indemnity obligation. Waller v. Truck Ins. Exch. (1995) 11 Cal.4th 1, 26-27.

5

20.     Under the insuring agreement of the policy, the underlying lawsuit plaintiff Neshat must have sought to impose liability on Goerner in his capacity as TDI's Director or Officer in order for such a claim to have triggered a defense obligation under the policy's basic coverage grant.

21.     Where members of a corporation are not sued in their capacity as Officers or Directors of the corporation, an insurer is not required to defend and indemnify them because the policy does not inure to their benefit as individuals. Bowie v. Home Ins. Co., 923 F.2d 705, 708-09 (9th Cir. 1991). Bowie recognized a crucial limitation on an insurer's obligation to defend: the nature and kind of risk covered by the policy.

22.     In his original Complaint filed on **July 6, 2005** and in his FAC filed on **October 3, 2005**, Neshat identified Goerner as the President, CEO, and a member of TDI's Board of Directors.  TDI was also named as a defendant in those pleadings.

23.     However, in his SAC filed on **February 21, 2006**, Neshat omitted the allegations indicating that he was suing Goerner as TDI's President, CEO, or member of its Board of Directors.  Instead, Neshat sued Goerner as an agent of a different company (MMT) and as a member of the Advisory Board of U-Nav. Neshat also omitted TDI as a defendant in his SAC.

24.     TDI was not named as a defendant in Neshat's SAC because on or about **November 3, 2005**, TDI had settled with Neshat for $37,000.

25.     Axis had initially agreed to defend Goerner against Neshat's original Complaint and FAC pursuant to a reservation of rights.  However, Axis withdrew from Goerner's defense after reviewing the allegations of Neshat's SAC.

26.     Based on the foregoing facts, Axis concluded that Goerner no longer qualified as an insured person under its policy.  That was because in his operative SAC, Neshat no longer attempted to impose liability on Goerner in his capacity

6

as an Officer or Director of TDI.

27.     Goerner disputes Axis' decision to withdraw from his defense after Neshat filed his SAC.  Goerner relies on extrinsic facts allegedly known by Axis to support his contention that Neshat's allegations in the SAC regarding Goerner's trips to Singapore and Thailand (and his dealings with an individual named Belton), refer to acts taken in his capacity as TDI's CEO.  He argues that Axis must infer from such extrinsic facts (including allegations in superseded pleadings) that he was really acting in his TDI capacity.

28.     However, resolution of the crucial coverage question depends on the capacity in which Neshat sued Goerner in the SAC, and not on Goerner's unsupported suppositions.

29.     Goerner's claim that Neshat could have sued him in the SAC as TDI's President or CEO, is pure unfounded speculation.  "An insured may not trigger the duty to defend against a third party by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant *might* amend its complaint at some future date."  Gunderson v. Fire Insurance Exchange (1995) 37 Cal.App.4th 1106, 1114.

30.     The evidence indicates that Neshat purposely did not sue Goerner in the SAC as TDI's officer or director, because Neshat had already settled with TDI.  Neshat knew how to sue Goerner in his capacity as TDI's director or officer because he had already done so two times before in his original Complaint and FAC, where he clearly set forth acts that Goerner had allegedly taken in his insured capacity as the President and CEO of TDI.  However, after Neshat settled with TDI, he only sued Goerner individually, as a member of the Advisory Board of U-Nav and/or as an agent of MMT.  As further held by the California Supreme Court in Gunderson, 37 Cal.App.4th at 1114: ". . . an insurer does not have a continuing duty to investigate whether there is a potential for coverage.  If it has

made an informed decision on the basis of the third party complaint and the extrinsic facts *known* to it at the time of tender that there is no potential for coverage, the insurer may refuse to defend the lawsuit."

31.    This Court has given Goerner ample opportunity to identify any allegation set forth in the SAC that demonstrates he was sued in his capacity as an officer or director of TDI, or which raises a possibility of some form of liability which arises from his actions as an officer or director of TDI.  Goerner has failed to do so.  (See transcripts of hearings before this Court held on **June 30, 2008** and **July 28, 2008**.)

32.    Paragraph 4 of the SAC alleges that Goerner is an individual and a member of the advisory board of U-NAV.

33.    Paragraph 6 of the SAC alleges that Goerner is acting on his own behalf and as a principal and agent for the other named defendants.  However, TDI is not included as one of the other named defendants.

34.    Paragraph 9 of the SAC alleges that Goerner contacted plaintiff on behalf of himself and co-defendant Low.

35.    While Paragraph 15 of the SAC alleges that certain of the communications between Goerner and Low with plaintiff Neshat took place at the offices of "TDI," TDI is not defined or named as a defendant, and the SAC alleged that Goerner and Low had authority and control over defendant MMT.

36.    Paragraph 46 of the SAC alleges that Goerner traveled to Singapore to discuss the business of MMT with Low, and Goerner made these travels at the expense of TDI and with the consent and knowledge of TDI.  However, nothing else is alleged as to TDI.

37.    Paragraph 47 of the SAC alleges that Goerner introduced plaintiff to various individuals at the offices of TDI while he met with plaintiff at TDI's offices.  The individuals included but were not limited to the chief financial

8

officer of TDI. While at TDI's offices, Goerner informed TDI's officers and employees that he was meeting with plaintiff regarding MMT.

38.     None of the allegations included in the SAC would give rise to any cause of action against TDI, and TDI was not named as a defendant in the SAC, nor could it be after the Settlement Agreement that was reached between TDI and the plaintiff in the underlying lawsuit. So therefore no cause of action names TDI as a defendant.

39.     The SAC's first cause of action is for breach of a written contract against MMT. The second cause of action is for breach of an oral contract against MMT. The third cause of action is for a breach of an implied contract against MMT. The fourth cause of action is for breach of fiduciary duty against Goerner; but it is based upon the fact that Goerner and Neshat had been friends for 15 years and does not reference TDI. The fifth cause of action is for negligent misrepresentation against defendants MMT, Low and Goerner, but there is no mention of Goerner's relationship between himself and TDI as the basis for this claim. The sixth cause of action is for material misrepresentation against MMT. The seventh cause of action is against Low and Goerner regarding an offer of securities with no mention of TDI. The eighth and ninth causes of action for fraud and constructive fraud are as against all defendants, but there are no allegations referencing TDI. The tenth cause of action for conspiracy is against all defendants and again does not mention TDI. Furthermore, there is no such thing as a cause of action for civil conspiracy alone under California law. <u>See</u> e.g. <u>Applied Equipment Corp. v. Litton Saudi Arabia Ltd.</u> (1994) 7 Cal.4th 503, 510-11.

40.     Therefore, there are no material issues of fact in dispute. Neshat's SAC did not seek to impose liability on Goerner in his capacity as an officer or director of TDI, nor could Neshat after he had settled with TDI. It is this fact that

eliminated a potential for coverage and terminated Axis's obligation to defend Goerner against Neshat's SAC under the terms of the Axis policy.  Axis correctly concluded that Goerner no longer qualified as an insured person under its policy and appropriately withdrew from its defense of Goerner.

41.    Partial summary judgment is hereby granted to Defendant Axis against Plaintiff Goerner on the Complaint as follows: granted as to the first cause of action for Declaratory Relief and the second cause of action for breach of contract (defense). The third and forth causes of action for breach of contract (indemnity) and bad faith, respectively, are moot.

**IT IS SO ORDERED.**

**DATE: This _23rd_ day of February, 2009.**


**GEORGE H. WU**
**United States District Court Judge**